Caroline Gervasini
as Venerable of Loggia
Cornelia Madre dei
Gracchi No. 831 West-
erly, R. I.
vs.
Concetta S. Grillo,
et al.

Eq. No. 262

## DECISION.
### October 19, 1927.

WALSH, J.    This is a suit in equity brought by Caroline Gervasini, in her capacity as Venerable of Loggia Cornelia Madre dei Gracchi No. 831, Westerly, R. I., against Concetta S. Grillo, Angelina Montalto, Josephine La Pera, Emma Toscano and Rosario Lupica, former officers of this lodge, seeking to compel these respondents to turn over to the petitioners, as present officers, money and property and so forth, which the petitioners claim belong to the lodge and which they claim have been taken by the respondents and the respondents have refused to turn the same over to them. It has been tried on nine issues of fact.

The first one is: "Was said Loggia Cornelia Madre dei Gracchi No. 831, Westerly, R. I., at the times mentioned in said bill of complaint, an unincorporated association located in the Town of Westerly, in said County of Washington?"

The answer to that, the Court finds, is "Yes".

The second: "Was the complainant, Caroline Gervasini, venerable or president of said association, at the time said bill of complaint was sworn to?"

The Court finds the answer to that to be "Yes".

Third: "Has the complainant been duly authorized as trustee of said association, to bring said bill of complaint?"

The Court finds that issue in the affirmative.

Fourth: "Were, on or about and for some time before November 16, 1924, Concetta S. Grillo, of said Westerly, venerable, Angelina Montalto, of said Westerly, assistant venerable or vice president, Josephine La Pera, of said Westerly, treasurer, Emma Toscano, of said Westerly, financial secretary, and Rosario Lupica, of said Westerly, recording secretary, respectively of said association, and all members of said association?"

The Court finds that up to November 16, 1924, and for some time thereafter, these parties named were officers and were members of said association, and that is answered "Yes".

Fifth: "Did said respondents, at the times mentioned in said bill of complaint, have custody and control of the record books, seal, books of account, check book, bank book, United States Liberty Bond of the principal sum of five hundred dollars, and large sums of money, the amount thereof unknown to the complainant, all the property of said association?"

To that question the Court finds that the respondents, as officers, did have in their custody the record books, seal, books of account, check book, bank book, the order book and the sum of $1,774.03, composed of $1,256.87 in cash, $16.00 in lodge furnishings, an Italian Liberty Bond of $500.00, and $1.16 in cash in the treasurer's hands on June 30, 1924, and that that all was the property of the Loggia Cornelia Madre dei Gracchi.

Sixth: "Did the said respondents, on or about November 16, 1924, withdraw from said association, taking with them said record books, seal, books of account, check book, bank book, order book, United States Liberty Bond of the principal amount of $500.00, and said moneys, being the property of said association?"

In answer to that issue I find that the respondents never withdrew from the Italian Society.    My reason

for that is that their attempted withdrawal at the meeting of December 28th, 1924, was null and void. The proceedings at that meeting were absolutely without any effect upon the Grand Lodge of the Sons of Italy because the notice, in the first place, which was sent out for that meeting was defective in that it did not conform to the by-laws regarding the notices of special meetings, wherein it is required that the business to be transacted before that special meeting shall be explicitly stated in the notice thereof. So that inferentially on that sixth issue I must find that the record books, seal, books of account, check book, bank book, order book, were in possession of respondents. The United States Liberty Bond I do not find in existence, but I do find that there was money made up as I have outlined, of the cash and furnishings and Italian Liberty Bond and cash in the treasury there. That money was rightfully in the possession of these respondents until their successors, the present complainants, were elected to office.

The seventh issue: "Have said respondents used moneys belonging to said association for unauthorized purposes, and loaned some of said money improperly and without authorization?"

The Court finds that in the affirmative. Under the by-laws as the Court reads them and translates them, the duty of the subordinate lodge in the disbursement of money under the constitution, was to pay the sum of ten dollars a week as a sick benefit and to pay a funeral benefit of $200.00, or such other sum as the respective lodges determined, in the event of death to the next of kin, and that being an inclusive power, and to loan the lodge's money is not included, I have to find that the loaning of money to Mrs. Marino and Mrs. LaVia was improper and un-

authorized and ultra vires. The seventh issue I find in the affirmative, that the respondents have used money belonging to the association for unauthorized purposes.

Eighth: "Is any or all of the property of said association mentioned in the bill of complaint, now in the possession of said respondents, and have said respondents paid over to said association the moneys held by them as set forth in the bill of complaint?"

In regard to that issue I find that the respondents were entitled to this property up to the time that the new officers were duly qualified to take their offices; that if they put their books, as they say, in this trunk the burden is upon them to find those books and deliver them to the new officers or to satisfactorily account for their absence. I do find that the respondents have not paid over to the association the money held by them as officers of this lodge. So that that eighth issue, as to that first part: "Is any or all of the property of said association mentioned in the bill of complaint now in the possession of said respondents?", the answer to that is "Yes". The second part: "Have said respondents paid over to said association the moneys held by them as set forth in the bill of complaint?", the answer is "No".

Ninth: "Did said association, before the bringing of the bill of complaint, demand of said respondents that they account for the moneys and property in their possession when they withdrew from said association, and that they pay over to the proper officers of said association said moneys belonging to and the property of said association and that they deliver over to the proper officers of said association all records of said association referred to in the bill of complaint, and all other property of said association in their possession,

and have said respondents failed and refused so to do?"

I do find that there was positive proof of a demand, the records of the Grand Lodge on October 29th, 1924, showing a visit of the Grand Lodge officers to Westerly and a formal demand by the Grand Lodge officers on October 19th, 1924, for the turn-over of this property. I further find a subsequent demand made at the time the new officers were elected, a final refusal of the respondents, and the ninth issue of fact is found by the Court in the affirmative.

In this case the testimony clearly shows there was some disagreement in regard to the expulsion of a member of this lodge and the member was ordered reinstated by the Grand Lodge and that order of the Grand Lodge apparently met with very scant favor by the local lodge in Westerly. The great preponderance of the testimony shows that was the beginning of the trouble between this local lodge and the Grand Lodge and Supreme Lodge. These women got it into their heads they were not going to have this woman reinstated on the orders of the Grand Lodge and from then on they didn't work in harmony with their superior officers. October 19th the record clearly shows that condition was brought home to the superior officers and they went to Westerly to find out what the trouble was. They met the officers of the lodge, the present respondents, and they talked the thing over apparently. The present respondents wanted to resign, quit, get out, and there the difference of opinion as to whose money this was, and whose property this was, arose. The respondents thought, in view of the fact they had contributed this money to the local treasury, that it was theirs, that the Grand Lodge had nothing to do with it. But unfortunately when they joined the Sons of Italy they became bound by

the by-laws of the Sons of Italy and were bound to obey them. The by-laws show that in the event of a withdrawal or an expulsion ample provision is made as to what happens to the property. It is turned over to the Grand Lodge. That Grand Lodge is to administer the same until successors to the retiring officers are elected, or the lodge is revamped, whereupon the Grand Lodge becomes liable to turn that money back to the new lodge and new lodge officers, minus the expense.

That is where they split. The members of the lodge in Westerly thought the money and seal and books and everything were theirs. They failed to realize that the Grand Lodge and Supreme Lodge had control over them. Take it all in all the complainants have proved by a fair preponderance of the evidence that they are entitled to the decree sought. The decree may be drawn in accordance with this opinion, $1,256.87, with interest at 6% from November 3rd, 1924, and also the sum of $500.00, face value of the Italian Liberty bond, without interest, $16 value of lodge regalia and $1.16 cash in hands of the Treasurer.

For complainant: A. V. Pettine.
For respondents: John J. Dunn.